IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JONATHAN JOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01190-STA-jay |
| ) | |
| TYLER BURCHYETT AND ) | |
| LARRY MCKENZIE, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Magistrate Judge York's Report and Recommendation (ECF No. 18) screening Plaintiff Jonathan Joy's Motion for Preliminary Injunction. (ECF No. 10.) Plaintiff has filed Objections to the Report. (ECF No. 19.) For the reasons stated below, the Court **ADOPTS** the Report and Recommendation, and Plaintiff's Motion is **DENIED**.

BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, claiming that Defendants conspired against him in state court proceedings. Specifically, Plaintiff states that Assistant District Attorney Tyler Burchyett falsely accused Plaintiff of failing to pay child-support obligations. Plaintiff further alleges that the presiding Chester County General Sessions Judge Larry McKenzie "went along with" the misrepresentations. Finally, Plaintiff maintains that Defendant McKenzie held ex parte meetings with Defendant Burchyett and had "actions taken and modifications entered in without the Plaintiff's participation [or] opportunity to defend the same." Thus, Plaintiff filed his Motion to halt the state court proceedings until the claims underlying this case are resolved.

1

DISCUSSION

The question before this Court is whether Plaintiff is entitled to a preliminary injunction. Courts consider four factors when evaluating a preliminary injunction: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (quoting *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc)). Further, a preliminary injunction is an extraordinary measure. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Therefore, a court should only grant the motion if the moving party carries the burden of proof by demonstrating that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary*, 228 F.3d at 739).

**I.  Likelihood of Success on the Merits**

Plaintiff is unlikely to prevail in this action because he filed a suit for money damages against a judge and state prosecutor. Both judges and prosecutors are protected by immunity from suit, making it difficult to succeed against either party.

**A.  Judicial Immunity**

Judges possess immunity from suits for monetary damages when acting in their official capacity. *Mireles v. Waco*, 502 U.S. 9 (1991) (citations omitted); *see also Webb v. Fisher*, 72 S.W. 110, 111 (1903) (affirming the doctrine of judicial immunity in Tennessee). By design, immunity from money damages permits judicial officers to act according to their convictions without fearing personal retribution. *Mireles*, 502 US at 10 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). As the Supreme Court has noted:

> If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

*Forrester v. White*, 484 U.S. 219, 226–27 (1988) (citations omitted).  Moreover, accusations of bad faith, malice, or corruption cannot overcome judicial immunity.  *Mireles*, 502 U.S. at 11 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  If a judicial officer acts wrongfully, the harmed litigant may pursue correction through appellate review.  *Forrester*, 484 U.S. at 227.  Thus, the American judicial system accounts for potential mistakes and abuse while preserving judicial independence.

However, the Supreme Court has noted two circumstances where a litigant may overcome judicial immunity in a suit for money damages.  First, judges are not immune for acts outside their official capacity.  *Mireles*, 502 U.S. at 11–12 (citing *Forrester*, 484 U.S. at 544–45 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)).  Second, judges are not protected for actions, "though judicial in nature, [are] taken in the complete absence of all jurisdiction."  *Id.*  (citations omitted).

Plaintiff asserts that Defendant McKenzie acted in the complete absence of his jurisdiction.  This exception is rarely successful in overcoming judicial immunity.  Where a judge oversteps his bounds, courts typically find that the judge acted within his authority even if the actions were unreasonable or inappropriate.  *See, e.g.*, *Brookings v. Clunk*, 389 F.3d 614, 623 (6th Cir. 2004) (finding that a probate judge who filed criminal complaint against a party in his court for fraudulently obtaining a marriage license did not act entirely outside his jurisdiction).

Specifically, Plaintiff alleges that Defendant McKenzie acted in the complete absence of his jurisdiction by holding ex parte communications with Defendant Burchyett and generally preventing Plaintiff from defending his position in court.  Even assuming that Plaintiff's allegations are true, he is not likely to succeed against Defendant McKenzie.  The Court looks to

the case of *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015) for guidance.  In *Rosen*, the plaintiff sued a state court judge, alleging that the defendant judge had imposed child support obligations that the plaintiff did not owe.  *Id.* at 1204–05.  After upholding dismissal of all the claims on grounds of legal insufficiency, the Court noted that any ex parte communications between the judge and state officials were subject to absolute immunity.  *Id.* at 1208.  Because the ex parte communications were made "as part of the judge's attempt to resolve the case before him," the judge and his statements were shielded.  *Id.*  (citations omitted).  Moreover, the Supreme Court has also indicated that ex parte communications do not remove judicial immunity.  *Forrester v. White*, 484 U.S. 219, 227 (1988) (citing *Stump v. Sparkman*, 435 U.S. 349, 362–63 n.12 (1978)).

Further, Plaintiff appears to misunderstand the "absence of all jurisdiction" exception to judicial immunity.  To illustrate more clearly, the exception applies where "the matter upon which [the judge] acts is clearly outside the subject matter of the court over which he presides." *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir. 1997).  For instance, if a probate judge assumed authority over a criminal case, his act would be in the absence of all jurisdiction because the judge was not vested with authority to preside over criminal matters.  *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 964–65 (6th Cir. 2021).  And a judge does not act in the complete absence of jurisdiction even if the judge acts maliciously so long as the act is within the scope of his authority.  *See id.*  Therefore, even if Defendant McKenzie acted with malice by holding ex parte communications and preventing Plaintiff from fully presenting his case, these acts were still judicial in nature.  Moreover, the alleged misconduct was aimed at resolving the child-support dispute—a subject within Defendant McKenzie's domain.  Accordingly, Plaintiff's accusations, even if true, do not establish acts made in the complete absence of jurisdiction.

4

In short, accusations of judicial abuse do not remove immunity. Thus, to the extent that Plaintiff's case relies on ex parte communications or misrepresentations regarding his child-support obligations, his odds of success are not high enough to warrant an injunction. And Plaintiff has not sufficiently pled other misbehaviors that would remove judicial immunity. *See Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

### B. Prosecutorial Immunity

Notably, prosecutorial immunity is similar to judicial immunity in that it applies to instances where the prosecutor is acting in his official capacity. *Imbler v. Pachtman*, 424 U.S. 409, 422–23 (1976); *see also Dibrell v. State*, No. E202100405COAR3CV, 2022 WL 484563, *5 (Tenn. Ct. App. Feb. 17, 2022) (citations omitted). And prosecutorial immunity from suit is absolute. *Pachtman*, 424 U.S. at 427; *see also* Tenn. Code. Ann. 9-8-307(d). Consequently, at times, such immunity leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Pachtman*, 424 U.S. at 427. Courts in Tennessee have also held that a prosecutor is immune from accusations of presenting false testimony at trial. *Dibrell*, 2022 WL 484563 at *6. Thus, a defendant cannot overcome prosecutorial immunity by alleging that a state prosecutor deliberately provided incorrect information. *See id.* However, immunity does not apply where a prosecutor acts in an administrative or investigative capacity. *Cunningham*, 842 Fed, Appx. at 966.

In essence, Plaintiff claims that Defendant Burchyett supplied false information at a hearing before the Defendant Judge McKenzie. However, these accusations do not expose Defendant Burchyett to suit. Simply put, Defendant cannot sue a prosecutor acting in his official capacity, and there is no reason to believe that Defendant Burchyett acted outside the general aim of his proscribed role. Further, there is no indication that Defendant Burchyett acted in an administrative or investigative capacity. Instead, the hearing and other proceedings centered on

5

the prosecution of Plaintiff's alleged failure to pay child support.  Thus, prosecutorial immunity seems to apply, making it clear that Plaintiff is unlikely to succeed on the merits as to Defendant Burchyett.

At this juncture, it looks like neither Defendant is subject to suit.  Therefore, Plaintiff's odds of success are low, and he should not be granted an injunction based on the "likelihood of success" factor.

## II. Movant's Irreparable Injury

Next, the Magistrate Judge found that Plaintiff was unable to establish an irreparable injury. (ECF No. 18 at 2–3.)  And Plaintiff's Objections are not responsive to this portion of the Report and Recommendation.  Plaintiff only states that the threat of injury against him is certain and immediate and not speculative.  (ECF No. 19 at 5.)  However, this is merely an assertion without factual basis, and Plaintiff does not address the case law cited by the Magistrate Judge.  At issue are the payments that Plaintiff was required to make in the form of child support.  This is a financial concern.

Speaking directly, financial loss is not ordinarily an irreparable injury for purposes of a preliminary injunction.  "Addressing the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages." *1st Ave. Funding v. Fairchild Holdings, Inc.*, 2012 WL 3061080, at *2 (E.D. Mich. July 26, 2012) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)).  "However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Id.*  Here, Plaintiff complains of child-support payments.  Given that this is a monetary obligation, the harm complained of is fully compensable by money damages.  Moreover, such payments are likely documented and easily calculated.  Accordingly, there is nothing irreparable about Plaintiff's injury for purposes of an injunction.

### III. Substantial Harm to Others

Further, the Magistrate Judge found that granting the preliminary injunction would cause substantial harm to others. In his Objections, Plaintiff pushes back, stating that the Court should only decide "whether the preliminary relief will not result in even greater harm to the nonmoving party." (ECF No. 19 at 7 (citing *NVR, Inc. v. Majestic Hills, L.L.C.*, WL 4673225, at *2 (W.D. Pa. Sept. 25, 2019).) However, the authority cited by Plaintiff is not binding law in the Sixth Circuit. Instead, Sixth Circuit case law asks "whether issuance of the injunction would cause substantial harm to others." *Johnson v. City of Memphis*, 444 F. App'x 856, 858 (6th Cir. 2011) (citations omitted). This consideration focuses on the nonmoving party as well as individuals and entities who are not parties to the action. To demonstrate, in the case of *Johnson v. City of Memphis*, the Sixth Circuit addressed whether to impose an injunction that allowed the promotion of minority police officers who had previously experienced advancement discrimination. *Id.* Analyzing the "substantial harm to others" factor, the court stated that promoting the plaintiffs would not pose a safety threat to the citizens of Memphis. *Id.* at 860. In other words, the Court weighed the risks of harm to the public—a non-party—posed by staffing issues that could have resulted from the injunction.

Thus, Plaintiff is incorrect where he asserts that the Court should not consider the potential harm to the children caused by ceasing child-support payments. Courts may consider non-parties when determining the outcome of a motion for a preliminary injunction. Consequently, the Court affirms the Magistrate Judge's statement that "[i]f such proceedings are stayed, it may result in a delay of Plaintiff's child support payment obligations and, in turn, result in substantial harm to the welfare of a child/children and the receiving parent charged with providing for said child/children." (ECF No. 18 at 6–7.) Therefore, on this factor, the circumstances weigh against granting the requested injunction.

### IV. Public Interest

Finally, the Magistrate Judge found that the public interest prong of the preliminary injunction analysis was not favorable for Plaintiff, noting that public policy in Tennessee strongly favors the enforcement of court orders related to the welfare of children. (*Id.* at 7.) Not only is this point well-taken, but as noted above, public policy also shields judges and prosecutors from suit when acting in their official capacities. Plaintiff responds by stating that his due process rights have been violated and that his constitutional rights are greater than the rights afforded to the children receiving child support. (ECF No. 19 at 8–9.)

However, Plaintiff has not shown that his due process rights were violated. Plaintiff may seek review of the court order imposing child support payments. Such a right of review or appeal is the due process protection that Plaintiff claims is missing. Second, even if his rights were violated, by nature of the immunity afforded to judges and prosecutors, Plaintiff appears to be without a remedy against either Defendant. In essence, this suit appears to be an improper vehicle for vindicating Plaintiff's rights. Finally, as a matter of public policy and social concern, the Court protects the rights of all parties, not just Plaintiff's. And, by way of the four-factor preliminary injunction test, the Court considers the potential harm to children. On this point, the Court's concerns for the children at issue are great. Thus, it would be inappropriate to pause the child-support payments.

Consequently, for the reasons stated above, the Court will not impede the state's ability to adjudicate Plaintiff's rights. The Court **ADOPTS** the Magistrate Judge's Report and Recommendation, and Plaintiff's Motion (ECF No. 10) is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson  
S. THOMAS ANDERSON  
CHIEF UNITED STATES DISTRICT JUDGE

Date: August 24, 2022.